# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

THE PEOPLES BANK

    Plaintiff,

v.                                                                                                  No. CIV 04-630 RLP/WDS

CINCINNATI INSURANCE COMPANY,

    Real Party in Interest,

v.

NEW MEXICO BANK & TRUST,

    Defendant.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the court on Defendant New Mexico Bank & Trust's ("NMBT's") Pre-Answer Motion to Dismiss for Failure to State a Claim upon which Relief May Be Granted, filed June 29, 2004. [Doc. No. 6.] The Motion is fully briefed, and there is no need for oral argument. After careful consideration of the pleadings and law, the court concludes that the Motion to Dismiss should be granted and that Plaintiff's Complaint should be dismissed with prejudice.

### Background

The following facts are taken primarily from Plaintiff's ("The Peoples Bank's") Complaint. The underlying facts do not appear to be in dispute. On June 4, 2004, real party in interest Cincinnati Insurance Company filed a Complaint for Damages. [Doc. No. 1.] The Peoples Bank is a foreign

entity with its principal place of business in the State of South Carolina. [Doc. No. 1, ¶ 1.] Defendant NMBT is a New Mexico entity with its principal place of business in Bernalillo County, Albuquerque, New Mexico. [Doc. No. 1, ¶ 2.]

On about January 17, 2003, Salli and Edward Bortort opened a savings account with NMBT in Gallup, New Mexico. At some point in early 2003, the Bortorts deposited a check at NMBT drawn on the account of Concord Baptist Church in the amount of $105,000.00. The Concord Baptist Church was a customer of The Peoples Bank in South Carolina. According to NMBT, it placed a hold on the out-of-state check and presented the check to The Peoples Bank for payment. In the Complaint, Plaintiff states that on February 25, 2003, NMBT paid a forged check drawn on the account of a customer of The Peoples Bank and then forwarded the check to The Peoples Bank for collection. [Doc. No. 1, ¶ 5.] On March 10, 2003, the check cleared The Peoples Bank. [Doc. No. 1, ¶ 6.]

On April 23, 2003, The Peoples Bank received a sworn statement from its customer that the check was forged. The Peoples Bank attempted to return the check to the depositor bank (NMBT), but the funds were distributed. [Doc. No. 1, ¶ 7.] NMBT denied The Peoples Bank's request for reimbursement. In addition, the Complaint acknowledges that "[b]ecause the check was not returned within 24 hours after receipt, the Federal Reserve System rules placed responsibility for the check upon The Peoples Bank. [Doc. No. 1, ¶ 7.]

On May 5, 2003, The Peoples Bank lodged a Proof of Loss in the amount of the check as a result of the paid forged check on the account of its customer. Cincinnati Insurance Company, the real party in interest, reimbursed The Peoples Bank in accordance with the Depository Institutions

Blanket Bond. [Doc. No. 1, ¶ 8.] Plaintiff notes that additional forged checks were presented to The Peoples Bank for payment but they were returned. [Doc. No. 1, ¶ 9.]

The Complaint alleges that New Mexico law provides that a collecting bank (NMBT) that transfers an item and receives a settlement or other consideration warrants to the transferee (The Peoples Bank) that all signatures on the item are authentic and authorized, and that the item was not altered. Because the signature on the pertinent check here was forged, it is The Peoples Bank's position that NMBT violated the transfer warranty, as set forth in NMSA 1978 § 55-4-207(a). Part of that warranty provides that the collecting bank (NMBT) warrants that all signatures on the item are authentic and authorized. The Peoples Bank requests an amount equal to the loss along with expenses and loss of interest incurred as a result of the alleged violation.

NMBT's Motion to Dismiss argues that the transfer warranty statute does not apply here because The Peoples Bank was not a transferee entitled to protection by transfer warranties, § 55-4-207(a). Instead of transferring the check to The Peoples Bank, NMBT merely presented the check for payment. Thus, according to NMBT, the presentment warranty, NMSA 1978 § 55-4-208, is the governing statute, and it does not require that the NMBT, as the collecting bank, warrant that all signatures are authentic. Instead, the presentment warranty requires, in part, that NMBT warrant to the drawee that pays or accepts the draft in good faith that the draft was not altered and that the warrantor has no knowledge that the signature of the purported drawer of the draft was unauthorized. § 55-4-208(a)(2 & 3).

Here, the Complaint does not allege, nor does The Peoples Bank argue, that NMBT had any reason to believe or know that the signature of the check was unauthorized or that the draft was altered. In addition, NMBT argues that The Peoples Bank requested relief conflicts with New

3

Mexico Commercial Code's scheme for allocating the risk of loss for mistaken payment of a forged check. Thus, for these reasons, NMBT requests that the Complaint be dismissed for failure to state a claim.

## Analysis

There are two sets of pertinent warranties set out in the New Mexico Statutes Annotated: Transfer warranties, § 55-4-207, and Presentment warranties, § 55-4-208.

**A.     Transfer Warranties**

Under Transfer warranties, the statute provides the following:

> A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that . . . all signatures on the item are authentic and authorized . . . .

NMSA 55-4-207(a)(3). Section 55-4-206 (Transfer between banks) states that "[a]ny agreed method that identifies the transferor bank is sufficient for the item's further transfer to another bank." Under § 55-3-203 (Transfer of instrument; rights acquired by transfer), the statute provides that "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."[1] The official comments to the statute note that a transfer of an instrument might mean that title to the instrument passes to the transferee, although that is not always true. NMSA 55-3-203, Official Comment No. 1.

As stated above, The Peoples Bank relies on the provisions of the Transfer warranties as the entire basis of its claim against NMBT. The case of <u>Decibel Credit Union v. Pueblo Bank & Trust</u>

---

[1] The California Commercial Code defines transfer similarly – a transfer "by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Cal. Com. Code § 3203.

Company, 996 P.2d 784, 785 (Colo. App. 2000) presents a similar question: which party must bear the loss for amounts paid on forged checks.  In Decibel Credit Union, a thief forged the signature of a customer on 14 checks and cashed each check at Defendant Pueblo Bank.  Pueblo Bank processed all of the checks and Plaintiff Decibel timely paid the checks.  Id.  Decibel's customer then discovered the forgeries and demanded reimbursement from Pueblo Bank.  Summary judgment was initially granted to Decibel because the court determined that Pueblo Bank had triggered its responsibility under the Colorado version of the UCC for both presentment and transfer warranties, which the court decided were breached.  Id. at 786.  The Court of Appeal reversed.

First, the Colorado Court of Appeals noted that the parties agreed that the drawee bank (e.g., The Peoples Bank in the present case) was liable to its checking account customer for payment of a forged check.  "Further, when the drawee bank honors the forged instrument, the payment is deemed final for a person who or an entity which takes the instrument in good faith and for value."  Id.  However, when appropriate and timely notice of the forgery is given to the presenting bank by the drawee bank, the drawee bank can in some circumstances shift liability to the presenting bank.[2]  Id.

Like New Mexico and California, Colorado defined the term "transfer" as a "delivery by a party other than the maker of an instrument for the purpose of giving that party the right to enforce the check."  Id. at 787.  The Colorado statute's transfer warranties are also similar to those set out in New Mexico's version.

The Colorado Court of Appeals rejected the drawee bank's argument that a transfer warranty was breached.  "Even if we assume that a transfer is involved here, it is well established that a transfer

---

[2] Here, it does not appear that The Peoples Bank did give appropriate and timely notice that would implicate such circumstances where liability might be shifted.  See Doc. No. 1, ¶ 7.

warranty as to the genuineness of the drawer's signature does not apply for the benefit of the drawee bank." Id. (internal citations omitted). Accordingly, the Court of Appeals concluded that the trial court erred in relying on this section to grant summary judgment for the drawee bank.[3] *See also* G.F.D. Enterprises, Inc. v. NYE, 37 Ohio St. 3d 205, 525 N.E.2d 10, 20 (Ohio 1988) (holding that transfer warranties did not extend from collecting banks to drawers; drawers should sue drawee bank for improper payment because drawee bank is in the better position to raise appropriate defenses).

Here, the court agrees with NMBT that when it presented the check for payment to The Peoples Bank, it did not engage in a transfer that would implicate transfer warranties. In other words, NMBT did not deliver the check to The Peoples Bank for the purpose of giving the bank the "right to enforce the instrument." § 55-3-203(a). NMBT presented the check for payment. *See* NMSA 55-3-501 ("'[p]resentment' means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument . . . .")

Moreover, the court agrees with NMBT's policy argument that the risk of loss for mistaken payment of a forged check normally falls upon the drawee bank that paid the check. § NMSA 55-3-404, Official Comment, n.3.

> This doctrine is based on the assumption that the depositary bank normally has no way of detecting the forgery because the drawer is not the bank's customer. On the other hand, the drawee bank, at least in some cases, may be able to detect the forgery by comparing the signature on the check with the specimen signature that the drawee has on file.

---

[3]Clearly, this decision is not binding on this court, but the court finds it persuasive authority.

Id. Indeed, this doctrine or general rule is well established. "The rule in Price [v. Neal, 3 Burr. 1354, 97 E.R. 871, 1762 WL 29 (KBD1762)] has been generally accepted by the courts in this country and has been followed in Illinois since as far back as 1874." In other words, "[t]he drawee of the bank is presumed to know the signature of the drawer; if the drawee pays a forged check to the holder, he will not be entitled to recover the money so paid, where there has been fraud practiced upon him." Clean World Engineering, Ltd. v. MidAmerica Bank, FSB, 341 Ill. App. 3d 992, 793 N.E. 2d 110, (Ill. App. 1 Dist. 2003) (internal citation omitted).

Thus, even in accepting all of the well-pleaded facts in the complaint and resolving all doubts in favor of the sufficiency of the complaint, as the court must on a Rule 12(b)(6) motion to dismiss, the court concludes that dismissal is proper here because it is beyond doubt that Plaintiff can prove no set of facts to support its claim that the transfer warranty applied and was breached. *See* Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (setting out Rule 12(b)(6) standard)

### B.   Presentment Warranties

NMBT admits that it provided a presentment warranty to The Peoples Bank. However, it does not appear from the Complaint that Peoples Bank alleged a violation of the presentment warranty. Moreover, NMBT points out that The Peoples Bank neither alleged nor argued that NMBT had any knowledge that the check at issue contained a forged signature. While the presentment warranty may apply here, the court agrees that there are no allegations that NMBT breached it, that it had knowledge that the draft was altered or that the signature of the purported drawer of the draft was unauthorized. § 55-4-208(a). Thus, to the extent that such a claim is asserted, it too will be dismissed for failure to state a claim under Rule 12(b)(6).

## **Conclusion**

For the reasons stated above, the court grants Defendant NMBT's Motion to Dismiss and will dismiss Plaintiff's Complaint, in its entirety.

IT IS THEREFORE ORDERED that Defendant New Mexico Bank & Trust's Pre-Answer Motion to Dismiss for Failure to State a Claim upon which Relief May Be Granted [Doc. No. 6] is GRANTED and that Plaintiff's Complaint is DISMISSED, with prejudice.

                                          Richard L. Puglisi
                                          United States Magistrate Judge